UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

IN RE: ROOMSTORE, INC.                    Case No. 11-37790-DOT
     Chapter 11 Debtor-in-Possession

## MEMORANDUM OPINION

On March 13, 2012, Mattress Discounters Group, LLC, "through its chief executive officer and sole participating Member and Manager, Raymond T. Bojanowski," filed a motion for relief from the automatic stay of the Bankruptcy Code, seeking to enforce a purchase option set forth in the January 8, 2010, "Buy-Sell Agreement for Mattress Discounters Group, LLC," between debtor, Raymond T. Bojanowski, and Mattress Discounters Group, LLC. (Docket 390) Debtor filed its objection to the motion for relief on March 27, 2012. (Docket 418)

On March 16, 2012, debtor filed its sixth notice of rejection of executory contracts and unexpired leases of nonresidential real property. (Docket 394) The notice stated that the debtor intended to reject the "Buy-Sell Agreement for Mattress Discounters Group, LLC" as an executory contract. Mattress Discounters Group, LLC, again "through its chief executive officer and sole participating Member and Manager, Raymond T. Bojanowski," filed an objection to debtor's notice on March 26, 2012. That response also contained a motion to strike, requesting that the court strike debtor's amended Schedule G as prejudicial and having been filed in bad faith. (Docket 412)

Hearing on several matters, including the motion for stay relief and debtor's notice of rejection, was held April 3, 2012. After hearing argument of counsel, the

court requested the parties to file proposed findings of fact and conclusions of law. The court has received and considered these papers.

For the reasons stated in this opinion, the court finds that the Buy-Sell Agreement was an executory contract that has been rejected by debtor's notice of rejection. In accordance with this ruling, the court overrules the objection to debtor's notice of rejection filed by Bojanowski and Mattress Discounters Group, denies the motion to strike debtor's amended Schedule G, and denies the motion for relief from stay filed by Bojanowski and Mattress Discounters Group.

<u>Findings of Fact.</u>

Debtor Roomstore, Inc., filed a chapter 11 petition in this court on December 12, 2011. On December 19, 2011, the United States Trustee appointed an official committee of unsecured creditors, which remains active. Debtor continues to manage and operate its business as debtor in possession.

Prior to the bankruptcy filing, on December 1, 2008, RoomStore and Raymond Bojanowski entered into a limited liability company operating agreement in connection with the formation of Mattress Discounters Group, LLC, (MDG), organized under the Virginia Limited Liability Company Act, VA. CODE ANN. §§ 13.1-1000 - 13.1-1080 (2012). Debtor owns a 65% membership interest in MDG, and Bojanowski owns the remaining 35% membership interest.

MDG operates a chain of approximately 80 retail mattress and bedding stores in Maryland, Virginia, Delaware, and Washington, D.C.; it employed approximately 188 employees in fiscal year 2011 and generated revenues of $59.5

2

million, $61.6 million, and $59.2 million in fiscal years 2010, 2011, and 2012, respectively. MDG is profitable, has no long-term debt, generates positive cash flow from operations, and paid pro rata cash distributions of $1,625,000 and $650,000 to the Debtor in fiscal years 2011 and 2012.

Debtor performs certain of MDG's essential support and logistics functions, including accounting, human resources, information technology, and distribution and delivery services.

Debtor and Bojanowski are parties to two prepetition agreements governing, among other things, the management and operation of MDG and their respective rights, duties, and restrictions with respect to their ownership interests in MDG: (a) Operating Agreement of Mattress Discounters Group, LLC, dated as of December 1, 2008, and (b) Buy-Sell Agreement dated January 8, 2010 (the "Agreement" or the "Buy-Sell Agreement"). These agreements are two separate, stand-alone contracts and not a single, integrated contract.

The Buy-Sell Agreement contains three categories of covenants: 1) options to purchase and rights of first refusal, 2) a mandatory buyout covenant, and 3) negative covenants, which may be summarized as follows:

**Option Covenants**:

If a Change of Control of the Debtor occurs, Bojanowski has the option to require MDG to purchase his entire membership interest in MDG. ¶ 3.1(a).

If Bojanowski becomes totally and permanently disabled for at least two months, MDG has the option to purchase Bojanowski's entire membership interest in MDG. ¶ 3.2(a).

If Bojanowski is divorced and a court order transfers part or all of his membership interest in MDG to his former spouse, MDG has the option to purchase Bojanowski's former spouse's newly transferred membership interest in MDG. ¶ 3.4(a).

If a member of MDG files a bankruptcy petition or is subject to an involuntary bankruptcy petition or its membership interest in MDG is subject to attachment or otherwise subject to transfer by operation of law, MDG has the option, for 180 days thereafter, to purchase such Member's membership interest in MDG. ¶ 3.5(a).

**Mandatory Buyout Covenant:**

This covenant requires MDG, upon Bojanowski's death, to purchase Bojanowski's entire membership interest in MDG from Bojanowski's estate. ¶ 3.3(a).

**Negative Covenants:**

These covenants prohibit members of MDG from (a) transferring their membership interests in MDG except as permitted by the Buy-Sell Agreement or (b) encumbering their membership interests in MDG. ¶ 2(a), (b).

On March 13, 2012, MDG (purporting to act "through its chief executive officer and sole participating Member and Manager, Raymond T. Bojanowski") filed a motion for stay relief that seeks to enforce the purchase option set forth in section 3.5(a) of the Buy-Sell Agreement, which permits MDG to purchase the debtor's membership interest in MDG within 180 days after debtor, among other triggers, files a bankruptcy petition. (Docket 390)

On March 16, 2012, debtor filed the rejection notice pursuant to the procedures approved by the Court in the "Order Pursuant to 11 U.S.C. §§ 105(a), 365(a), and 554 and Bankruptcy Rule 6006 Authorizing (I) Expedited Procedures for Rejecting Unexpired Leases of Nonresidential Real Property and Executory

4

Contracts, (II) Abandonment of De Minimis Personal Property, and (III) Establishing Claims Bar Date as Applicable." (Docket 237)

Also, on March 16, 2012, debtor filed an amended Schedule G with the Buy-Sell Agreement listed as an executory contract. (Docket 393)

On March 26, 2012, Bojanowski filed MDG's objection to debtor's rejection notice and also filed a motion to strike, requesting that the court strike debtor's amended Schedule G as prejudicial and having been filed in bad faith. (Docket 412)

On March 27, 2012, debtor filed an objection to Bojanowski and MDG's stay relief motion based in part on debtor's proposed rejection of the Buy-Sell Agreement. (Docket 418)

Hearing on the various pleadings, including a preliminary hearing on Bojanowski and MDG's motion for relief from the stay and debtor's notice of rejection was held on April 3, 2012, following which the court took the matters under advisement. The parties agreed that the automatic stay would continue in effect pending the court's ruling on the rejection notice.[1]

Discussion and Conclusions of Law.

The issue here is whether the Buy-Sell Agreement is an executory contract that may be rejected by the debtor pursuant to Bankruptcy Code § 365(a). The issue is important to the parties because the option provision, ¶ 3.5(a), in the Agreement gives MDG the right to purchase debtor's interest in MDG upon debtor's

---

[1] For details, see the court's order entered May 11, 2012. (Docket 573)

bankruptcy filing. Upon exercise of the option, the Agreement provides a method for determining the purchase price. However, the purchase price determined pursuant to the Agreement is not necessarily the market value of debtor's interest. Debtor therefore wishes to reject the contract so that it can maximize the value of its interest by exposing it to the market. Debtor has argued that Bojanowski and MDG oppose rejection so as to acquire the interest at less than market value.

Commentators and courts have noted that the law of executory contracts is "hopelessly convoluted" and a "bramble filled thicket." *See Cohen v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.),* 138 B.R. 687, 690 (Bankr. S.D.N.Y. 1992) (quoting Michael T. Andrew, *Executory Contracts Revisited: A Reply to Professor Westbrook*, 62 U. Colo. L. Rev. 1 (1991)).[2] While the issue presented in the present case is fairly limited and straightforward, the case nevertheless illustrates the difficulty of applying abstract legal principles to unique facts.

The Fourth Circuit and most courts have decided issues on assumption or rejection of executory contracts under § 365(a) using Professor Countryman's definition, formulated nearly 40 years ago:

---

[2]The reference to Professor Westbrook is to a 1989 article by Professor Jay Lawrence Westbrook, in which he noted that "[b]ankruptcy is that volume of the law that might have been written by Lewis Carroll, every conventional legal principle refracted through the prism of insolvency. In that fact lies much of its students' joy — and their frustration. In no chapter of that volume has the law become more psychedelic than in the one titled "executory contracts." Jay Lawrence Westbrook, *A Functional Analysis of Executory Contracts*, 74 Minn. L. Rev. 227, 228 (1989).

> [A] contract is executory if the obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other.

Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L. Rev. 439, 460 (1973), as quoted in *Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.* (*In re Richmond Metal Finishers, Inc.*), 756 F.2d 1043, 1045 (4th Cir. 1985) (citing *Gloria Mfg. Corp. v. Int'l Ladies' Garment Workers' Union*, 734 F.2d 1020, 1022 (4th Cir. 1984)).[3] *See* 3 COLLIER ON BANKRUPTCY, ¶ 365.02[2][a] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. rev. 2010).

As previously noted, the dispute between the parties in this case concerns the purchase option provision of the Buy-Sell Agreement, ¶ 3.5(a). That paragraph provides that "[i]f a Member. . . files a voluntary petition under any bankruptcy or insolvency law. . . then the Company shall have the option for a period of 180 days after the date of the Insolvency Event to purchase the Membership Interest for Fair Market Value . . . ." Fair Market Value is defined in Section 1 of the Agreement. The court has been unable to find a case involving a contract quite like the one being judged here. And even though both parties rely on the Fourth Circuit's opinion in *Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc.* (*In re Richmond Metal Finishers, Inc.*), 756 F.2d 1043, 1045 (4th Cir. 1985), and the

---

[3] For a discussion of the Countryman definition of executory contracts, see 3 COLLIER ON BANKRUPTCY, ¶ 365.02[2][a] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. rev. 2010).

Countryman definition of executory contracts, courts have divided on the two divergent approaches argued by the parties.

According to MDG and Bojanowski, the date of the commencement of a case is the critical date for determining whether a contract is executory. In support of their position, they cite *RCI Technology Corporation v. Sunterra Corporation (In re Sunterra Corporation)*, 361 F.3d 257, 264 (4th Cir. 2004) ("Applying the Countryman Test, the Agreement was not executory unless it was executory as to *both* Sunterra and RCI when Sunterra petitioned for bankruptcy.") (emphasis in original). Here, on the date debtor filed bankruptcy, no party to the Agreement had exercised any of the option covenants under the Agreement. Thus, MDG and Bojanowski argue that no party had affirmative or negative duties to perform that could lead to a material breach. Because there was no mutuality of obligations, they posit that the Agreement is not executory in nature. MDG and Bojanowski cite the following cases in support of their broad assertion that contracts with purchase options not exercised prepetition cannot be executory: *Unsecured Creditors' Committee v. Southmark Corp. (In re Robert L. Helms Constr. and Dev. Co.)*, 139 F.3d 702 (9th Cir. 1998); *Gouveia v. Tazbir*, 37 F.3d 295 (7th Cir. 1994); *BNY Capital Funding, LLC v. U.S. Airways, Inc.*, 345 B.R. 549 (E.D. Va. 2006); *In re Plascencia*, 354 B.R. 774 (Bankr. E.D. Va. 2006); *Bronner v. Chenoweth-Massie P'ship (In re Nat'l Fin. Realty Trust)*, 226 B.R. 586 (Bankr. W.D. Ky. 1998); *In re Bergt*, 241 B.R. 17 (Bankr. D. Alaska 1999).

In the case of *Robert L. Helms Construction and Development Co.*, 139 F.3d

8

702, Southmark, a Texas corporation, sold real property to Double Diamond Ranch Limited Partnership with an option to buy the property back. Southmark subsequently filed a chapter 11 case without having exercised its repurchase option. Southmark's chapter 11 plan provided that all executory contracts not listed were deemed rejected. Because the plan did not list the option contract, the contract would have been rejected if it had been executory. The issue of whether in fact the option contract was executory was not addressed in the Southmark bankruptcy.

Some time later, Double Diamond itself filed bankruptcy in Nevada. In that case, Double Diamond's unsecured creditors committee sought to sell the real property free and clear of Southmark's purchase option. Southmark opposed the sale, and the bankruptcy court found that the option contract had indeed been executory and thus had been rejected in the Southmark bankruptcy. The ruling was appealed to the Bankruptcy Appellate Panel, which reversed and held that the option contract had not been executory and thus had not been rejected. Southmark appealed to the Ninth Circuit Court of Appeals. The Ninth Circuit, en banc, reversed the lower courts, holding that a purchase option not exercised prior to the bankruptcy is not an executory contract.[4] The court, quoting the Countryman definition, puzzled over the application of the definition to "a paid-for but unexercised option . . . ." and noted that "t[h]e contingent nature of the obligations

---

[4]The Ninth Circuit remanded the case to the bankruptcy court for further findings concerning treatment of the option in Southmark's chapter 11. The court recognized that the contract might have been specifically rejected in Southmark's chapter 11 plan, which would be conclusive of rejection. 139 F.3d at 704.

9

has troubled courts." *Id.* at 705. After reviewing decisions on both sides of the issue, the court made its ruling on the following basis:

> A better approach . . . is to ask whether the option requires further performance from each party at the time the petition is filed. Typically, the answer is no, and the option is therefore not executory. The optionee need not exercise the option-if he does nothing, the option lapses without breach. The contingency which triggers potential obligations-exercising the option-is completely within the optionee's control. . . .

*Id.* at 705-06. The Ninth Circuit considered noteworthy the fact that its ruling was important to Southmark's bankruptcy estate for the preservation of a valuable asset, whereas the bankruptcy court's ruling that the contract was rejected gave the optionor, Double Diamond, "an undeserved windfall." *Id.* at 706. Indeed, the court went on to discuss that debtors sometime fail to recognize the value such options and "fail to expressly assume them. This leads to a trap, as unassumed executory contracts may be deemed rejected . . . when the trustee has no intention of abandoning the asset." The court noted the "sidesteps" that courts have taken to avoid such a result. *Id.*

Other similar rulings rely on the Ninth Circuit's analysis in *Helms Construction*. In *Bronner v. Chenoweth-Massie Partnership (In re National Financial Realty Trust)*, 226 B.R. 586 (Bankr. W.D. Ky. 1998), debtor held a prepetition unexercised option to purchase realty from defendant. Post-petition, debtor transferred the option to plaintiff. When plaintiff attempted to exercise the option, defendant refused to comply on the basis that the option was an executory contract that had been rejected because it had not been timely assumed. The court,

10

referring extensively to *Helms Construction,* held that the option was not an executory contract, and therefore assumption was not required. "The pivotal question is whether performance is due by *both* sides [when the petition is filed]." *Id.* at 590. If neither party is required to do anything to avoid a breach, the optionee has discretion whether to exercise the option. "The optionee does not commit a breach by choosing to do nothing." *Id. See also In re Bergt*, 241 B.R. 17 (Bankr. D. Alaska 1999) (nondebtor's unexercised right of first refusal to purchase real property of debtor, a property interest under state law, was not executory contract).

In contrast, debtor's position, which finds ample support in the case law, is that a contingent obligation, even though not yet triggered on a debtor's petition date, is nevertheless executory until expiration of the contingency because "[u]ntil the time has expired during which an event triggering a contingent duty may occur, the contingent obligation represents a continuing duty to stand ready to perform if the contingency occurs." *Lubrizol*, 756 F.2d at 1046; *see also CB Holding Corp.*, 448 B.R. 684, 689 (Bankr. D. Del. 2011) (holding that a right of first refusal is executory, noting that "the majority of courts" have so held, and criticizing the *Bergt* decision and others that held otherwise); *In re AbitibiBowater, Inc.*, 418 B.R. 815, 830–31 (Bankr. D. Del. 2009); *In re Simon Transp. Servs.*, 292 B.R. 207, 219–20 (Bankr. D. Utah 2003); *In re Kellstrom Indus., Inc.,* 286 B.R. 833, 834–35 (Bankr. D. Del. 2002); *In re Riodizio, Inc.*, 204 B.R. 417, 424 (Bankr. S.D.N.Y. 1997). *In re A.J. Lane & Co.,* 107 B.R. 435, 437 (Bankr. D. Mass. 1989) ("The contingency of the option exercise does not make the agreement non-executory."); *In re Hardie*, 100 B.R. 284,

11

287 (Bankr. E.D.N.C. 1989); *G-N Partners*, 48 B.R. 462, 465 (Bankr. D. Minn. 1985); *cf. In re Safety-Kleen Corp.*, 410 B.R. 164, 167 (Bankr. D. Del. 2009) (holding that contingent indemnity obligations were sufficient to render a contract executory; the option covenants were executory both as of the petition date and on an ongoing basis thereafter).

An enlightened discussion of the question raised here is found in *In re Simon Transportation Services*, 292 B.R. 207, 218-220 (Bankr. D. Utah 2003). The debtor, a large motor carrier, held on the petition date a large number of "trade-back" agreements that gave it the option to trade used trucks back to the seller of the trucks and to require the seller to repurchase trucks at a fixed price. Because the market price of a used truck was less than the price set under the trade-back agreements, the trade-back agreements were worth approximately 4.1 million dollars. The debtor sought to assume and assign those trade-back agreements. The court considered the decisions on both sides of the issue of whether unexercised options may constitute executory contracts and concluded that the trade-back agreements in question were executory contracts that could be assumed and assigned.

In its discussion, the court noted that some courts have adopted a "functional approach" to the issue by which they determine whether a contract is executory by looking "to the benefits to be gained by the debtor's estate . . . ." *Id.* at 218. It further noted that the Tenth Circuit would likely find the trade-back agreements to be executory, as "the economic realities of the situation turn the options into

obligations. Exercising the Trade–Back Agreements is the only sensible course of action available to Simon. Viewed in such a way, the Trade–Back Agreements fall within the definition of executory contracts even under the Countryman approach." *Id.* at 220.

Debtor cites the Fourth Circuit's *Lubrizol* decision in support of its argument that the MDG Buy-Sell Agreement with its contingency provisions is executory. In that case the court held that a technology licensing agreement held by the debtor was executory. Among other conditions, the licensing agreement required the licensor to defend debtor from infringement suits and also to indemnify debtor. The reported facts of the case do not indicate that any such suits had been filed on Lubrizol's petition date.[5] The court of appeals specifically held that this contingency did not prevent the licensing agreement from being executory. *Id.* at 1046. The court also noted several continuing duties of the parties under the contract. Obligations the licensor of the agreement owed the debtor included the duty of "notice and forbearance in licensing." *Id.* at 1045. Duties of the debtor to the licensor included "the continuing duty of accounting for and paying royalties for the life of the agreement" and keeping license technology in confidence. *Id.* at 1046.

Debtor further argues that the provisions of Paragraphs 2(a) and (b) of the Buy-Sell Agreement, which prohibit members of MDG from encumbering their interests in MDG or transferring their membership interests except as permitted in

---

[5] Additionally, the court noted that Lubrizol had never used the licensed technology at issue. 756 F.2d at 1045.

the Agreement, render the Agreement executory. Such a conclusion finds support in *Sunterra*[6] and *Lubrizol,*[7] both of which described types of continuing duties of the parties to the contracts that made those contracts executory.

I decline to follow the line of authority of the *Helms Construction* decision of the Ninth Circuit and cases following it. One strong factor in my decision is that the MDG Buy-Sell Agreement contains more than a simple purchase option or right of first refusal. Unlike the facts in the majority of cases cited by MDG and Bojanowski, the court here is evaluating a complex contract with multiple continuing conditions.

I further find that Bojanowski and MDG's reliance on the Fourth Circuit

---

[6]The Fourth Circuit in *Sunterra* remarked that:
On this point, we agree with the district court that the Agreement was executory when Sunterra petitioned for bankruptcy. When the bankruptcy petition was filed, each party owed at least one continuing material duty to the other under the Agreement-they each possessed an ongoing obligation to maintain the confidentiality of the source code of the software developed by the other, i.e., the Software and the Sunterra Enhancements.
361 F.3d at 264.

[7]Similarly, in *Lubrizol,* the Fourth Circuit noted that*:*
Applying that test here, we conclude that the licensing agreement was at the critical time executory. RMF owed Lubrizol the continuing duties of notifying Lubrizol of further licensing of the process and of reducing Lubrizol's royalty rate to meet any more favorable rates granted to subsequent licensees. By their terms, RMF's obligations to give notice and to restrict its right to license its process at royalty rates it desired without lowering Lubrizol's royalty rate extended over the life of the agreement, and remained unperformed. Moreover, RMF owed Lubrizol additional contingent duties of notifying it of suits, defending suits and indemnifying it for certain losses.
756 F.2d at 1045.

14

statement in *Sunterra* that the commencement date of the bankruptcy case is the date for determining whether a contract is executory is not well-placed and begs the question. The real issue in this case is whether an option contract can be executory. The facts in *Sunterra* are plainly distinguishable from those here. *Sunterra* involved a prepetition software licensing agreement that the court held was executory but which debtor was prohibited from assuming, for other reasons not relevant here, pursuant to § 365(c). The court held the agreement was executory on the petition date because on that date each party had a "continuing material duty" to the other to maintain the confidentiality of the source code of the subject software. *Id.* at 264.

MDG and Bojanowski also rely on a 2006 decision from the Eastern District of Virginia. In *BNY, Capital Funding LLC v. US Airways, Inc.*, 345 B.R. 549 (E.D. Va. 2006), debtor US Airways held a binding prepetition letter of intent from BNY, Capital Funding, under which BNY would provide financing for debtor's purchase of aircraft. In its plan of reorganization, debtor included the letter of intent on a list of executory contracts to be assumed. BNY objected to this assumption based upon its position that Bankruptcy Code § 365(c) prohibits the assumption of an executory contract to make a financial accommodation. Debtor responded by asserting that the letter of intent was in fact not an executory contract.

The bankruptcy court ruled in favor of debtor that the letter of intent was not an executory contract. The district court affirmed. Citing the Countryman definition, which is followed in the Fourth Circuit, the court found that the debtor's letter of intent was not an executory contract because debtor had no unperformed

obligations under the letter of intent at the time of the petition. Its future obligations were contingent upon debtor's exercise of its option. The court noted that the Fourth Circuit in *Lubrizol* had stated that the "contingency of an obligation does not prevent its being executory under § 365." *Id.* at 553, citing *Lubrizol,* 756 F.3d at 1046. The district judge acknowledged that the contingency premise was sound in *Lubrizol* but not in the case of *US* Airways, and he distinguished the two cases. He noted that *Lubrizol* involved a technology license agreement under which both sides had ongoing obligations but that US Airways had no binding obligations on the petition date, "and thus the contract was not executory under the *Countryman* definition." 335 B.R. at 553. There were no unperformed obligations on US Airways under its letter of intent, the conditions of which became material only if it sought to exercise the option.[8]

There are factual distinctions between the *US Airways* case and the case before me which make that case inapposite here. The dispositive distinction is that in this case there was a continuing obligation on each side. Each had agreed to negative covenants under which each agreed to refrain from transferring or encumbering its interest in MDG. Further, in *US Airways*, the debtor was the

---

[8] MDG and Bojanowski also cite *In re Plascencia*, 354 B.R. 774 (Bankr. E.D. Va. 2006), a chapter 13 case in which the debtor owned real property that was subject to a right of first refusal. This case can be readily distinguished. While the court held that the right of first refusal was not an executory contract, citing the *US Airways* case, 345 B.R. 549, the primary basis for the ruling is the fact that the holder of the first refusal right held an interest in property, protected by a deed recorded at the time of debtor's purchase.

16

holder of the option and sought to assume it, whereas in this case, the holder of the option is the creditor. Assumption served to retain a valuable asset for the estate in the *US Airways* case, whereas in this case, if debtor cannot reject the Buy-Sell Agreement, a valuable asset may be removed from the estate. While there is a provision in the Agreement for pricing the asset, a transfer pursuant to those terms would still remove the asset from the market and its valuation mechanisms. Instead, under the Agreement, the asset would be sold at a fair market price as defined in the Buy-Sell Agreement. If the parties to the Agreement do not agree upon a fair market price, then appraisers will determine the fair market price. This may not maximize recovery.[9] Debtor's rejection of the Agreement will give it the opportunity to expose the asset to the market and maximize its value for the benefit of the bankruptcy estate.

Finally, the court's ruling on the executory contract issue requires the court to deny the motion of MDG and Bojanowski for relief from the automatic stay under which they seek to exercise the purchase option, because rejection of the contract takes that option away.

---

[9] The court notes the potential difference in recovery for the estate in light of the discussion in *Simon Transportation Services* as to the functional and economic realities approaches of determining whether a contract is executory. Under those approaches, this contract would likely be found to be executory. It is ironic that *Helms Construction*, 139 F.3d 702, which is probably the strongest opinion in support of MDG's and Bojanowski's position, is arguably based on a policy emphasized by the Ninth Circuit of preserving the asset for the benefit of the bankruptcy estate.

In conclusion, in light of the continuing obligations on each side and the binding Fourth Circuit precedent of *Lubrizol*, I find the Buy-Sell Agreement to be an executory contract. Accordingly, the objection of MDG and Bojanowski will be overruled and the contract is deemed rejected as of the March 16, 2012, rejection date set forth in debtor's sixth notice of rejection of certain executory contracts.[10]

The court does not find that debtor's amendment of Schedule G to include the Buy-Sell Agreement was in bad faith or unduly prejudicial. Pursuant to Bankruptcy Rule 1009(a), "[a] voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed." There has been nothing presented to the court that persuades it that debtor, in choosing its strategies in this chapter 11 case, has acted in bad faith. The motion of MDG and Bojanowski to strike will be denied.

A separate order will issue.

Signed: June 4, 2012

                                       /s/ Douglas O. Tice Jr.
                                       **DOUGLAS O. TICE JR.**
                                       **CHIEF JUDGE**
                                       **UNITED STATES BANKRUPTCY COURT**

Copies to:

Troy Savenko
Kaplan Voekler Cunningham & Frank, PLC

---

[10] See the court's order in this case authorizing procedures for rejecting executory contracts. (Docket 237)

P.O. Box 2470
Richmond, Virginia 23218-2470
Counsel to the Debtor and Debtor-in-Possession

Stephen Giordano
12501 Patterson Avenue
Richmond, Virginia 23238
Debtor Designee

Tyler P. Brown
Justin F. Paget
Hunton & Williams
951 E. Byrd Street
Richmond, Virginia 23219
Counsel for Unsecured Creditors Committee

Robert B. Van Arsdale
Office of the United States Trustee
701 E. Broad Street, Suite 4304
Richmond, Virginia 23219

William A. Gray
Sands Anderson PC
P.O. Box 1998
Richmond, VA 23218-1998

Mark B. Joachim
Arent Fox LLP
1050 Connecticut Avenue
Washington, DC, 20036

Bruce Buechler, Esquire
Lowenstein Sandler PC
65 Livingston Avenue
Roseland, New Jersey 07068